## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LIFE INSURANCE COMPANY OF NORTH
AMERICA, a Pennsylvania corporation,

        Plaintiff,

vs.                                                          No.  CV 96-208 SC/RLP

GLORIA MARTINEZ, individually, and
as legal guardian for GLORIA NICOLE
SANDOVAL, a minor child,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on cross-motions for summary judgment filed by Plaintiff Life Insurance Company of North America ("LINA") on November 12, 1996 (Doc. No. 21) and by Defendant Gloria Martinez ("Martinez") on November 15, 1996 (Doc. No. 25).  For the reasons contained in this opinion, Defendant's motion will be GRANTED and Plaintiff's motion will be DENIED.  I find and conclude that there was coverage under an accidental death insurance policy on the date of death of the insured, Geraldine R. Sandoval.

**Background.**

This insurance coverage case arises out of tragic circumstances:  Defendant

1

Martinez's granddaughter and legal ward, the minor child Gloria Nicole Sandoval (now a young teenager), is an orphan.  Her father, Ubaldo Sandoval, shot and killed his wife, the child's mother, Geraldine R. Sandoval, on March 10, 1995.  Mr. Sandoval then fled to Mexico and died there on August 20, 1995.  Nicole was the couple's only child and is their sole heir.

Ubaldo Sandoval worked in New Mexico for Western Atlas International, Inc. ("Western Atlas") until his termination on February 24, 1995.  Through his employer, Mr. Sandoval had two insurance policies issued by LINA insuring the life of his wife, Geraldine.  One was a $20,000 group life insurance policy, and the other was an optional $100,000 supplemental accidental death and dismemberment ("AD&D") group policy. The latter was paid for entirely by the employee through payroll deductions.

Defendant Gloria Martinez, the maternal grandmother of Gloria Nicole Sandoval, has assumed the care and custody of the child.  She has been appointed as the child's guardian in state court, and she also serves as the personal representative of the estate of Geraldine Sandoval.  After her appointment, she filed a claim with LINA on behalf of her legal ward, Gloria Nicole Sandoval, for the proceeds of both the life insurance policy and the AD&D policy as a result of the death of Geraldine R. Sandoval.

 Plaintiff LINA alleges in its Complaint that coverage under both policies ended on February 24, 1995 when Mr. Sandoval terminated his employment with Western Atlas.[1]

---

[1]  Plaintiff now contends that coverage ended not upon termination of employment, but rather on the next "policy due date" after termination, March 1, 1995.

2

It also alleges that the $20,000 life insurance policy provided conversion privileges for 31 days after termination of coverage, and that coverage remained in effect during that 31-day conversion period under the life insurance policy.[2]  Compl. ¶¶ 20, 21 at 3.  Mrs. Sandoval's death on March 10, 1995 was a covered event under the life insurance policy. *Id.* ¶ 23 at 4.  The Complaint alleges, however, that the AD&D benefit is not payable under the AD&D policy.  *Id.* ¶ 24 at 4.

Plaintiff filed this interpleader action to determine the rights of all interested individuals in the proceeds of both policies.  By agreement of the parties, the Court ordered that the $20,000 group life proceeds be disbursed to Defendant.

In her Counterclaim for payment of insurance proceeds, Defendant Martinez alleges that, like the group life policy, the AD&D policy contains a 31-day right of conversion, as well as "a grace period after payment of the initial premium with such policy to remain in effect for said 31 day period."  Def. Ans. & Claim ¶ 10 at 4. Defendant also alleges there is an ambiguity in the policy such that the issue of continuance of coverage under the AD&D policy should be construed against the insurance company.  *Id.* ¶ 12 at 4.

The crux of the dispute between the parties is whether coverage should be

---

[2]  Because the life insurance policy was not included in the exhibits attached to any of the briefs, the Court requested that a copy be provided to it by counsel for the Defendant.  The group life insurance policy contains the following language in the section entitled "Conversion Privilege":  "If [the insured] dies during this 31 day [conversion] period, then we will pay, as a claim on this policy, the amount of life insurance that he could convert.  It does not matter whether he applied for a converted policy."  Policy No. LM-8L65(15909) at 4.

extended during the 31-day conversion period contained in the AD&D policy. The analysis requires interpretation of ERISA principles, applicable state law, and the terms of the policy.

In its motion for summary judgment, Plaintiff LINA argues that under Texas law and the express terms of the policy, Geraldine Sandoval's death was not a covered event under the AD&D policy. Coverage ended on the first "premium due date" after Ubaldo Sandoval's termination from his employment with Western Atlas, which LINA asserts was March 1, 1995. A Texas statute mandating extended coverage during the 31-day conversion period has been held to apply only to life, not AD&D, insurance policies. Alternatively, Plaintiff argues that even if the New Mexico Insurance Code applies, it should be interpreted the same as that of Texas.

In her cross-motion for summary judgment, Defendant asserts first that coverage was in effect during the entire month of March 1995 because the last payment was made on the AD&D policy on March 3, 1995 by means of a deduction from Mr. Sandoval's final paycheck, and that Plaintiff should be estopped from denying coverage because of its acceptance of the March 3 premium. Her second argument is that the New Mexico Insurance Code mandates extended coverage during a 31-day conversion period under the AD&D policy because it is a "group life policy" under the Code. Finally, Martinez argues there are ambiguities in the policy dealing with coverage, which should be construed against the insurer and in favor of coverage. One ambiguity she identifies is the lack of a definition of "covered class," and the other deals with the effect of the grace

4

period in the policy.

Although Plaintiff alleges in its Complaint and Defendant admits in her Answer that the subject matter of the case is an ERISA plan, neither party had mentioned ERISA in their briefs.  In response to an inquiry from the Court about the applicability and effect of ERISA on the case, both sides filed supplemental briefs (Docs. Nos. 28 & 29).

**Summary Judgment Standards.**

Summary judgment is appropriately granted when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law."  Thrasher v. B & B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993); Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir. 1991).  The party moving for summary judgment bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, the opposing party must provide the court with specific facts showing a genuine dispute for trial.  Fed. R. Civ. P. 56(e); Gray v. Udevitz, 656 F.2d 588, 592 (10th Cir. 1981).  A dispute about a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**Discussion.**

5

Because ERISA preempts most state laws, I shall begin my discussion with an analysis of the applicability of ERISA, continue with preemption analysis of different aspects of state law, and conclude with policy interpretation.

### 1. Does ERISA Apply?

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempts state laws relating to "employee benefit plans," not all state laws regarding employee benefits. <u>Fort Halifax Packing v. Coyne</u>, 482 U.S. 1, 7-8 (1987). ERISA defines "employee welfare benefit plan" as

> [A]ny plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . through purchase of insurance or otherwise. . . benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1).

Plaintiff argues that ERISA applies to the AD&D policy; Defendant Martinez asserts that ERISA does not apply. Defendant's argument is that the AD&D insurance contract involved coverage of dependents of the workers at Western Atlas that was voluntary in nature, that the employer did not contribute to the cost of the policy, that the employer's involvement was simply to permit the insurer to offer the plan to the employees and to collect and remit the employees' premiums to the insurer, and that the employer received no profit or other benefit from the plan.

By this argument Defendant is attempting to invoke the "safe harbor" regulation under ERISA, 29 C.F.R. § 2510.3-1(j), which provides that the term "employee welfare

benefit plan" shall not include programs in which (1) no contribution is made by the employer;  (2) participation in the program is completely voluntary for the employees;  (3) the sole functions of the employer are to permit the insurer to publicize the program to employees and to collect premiums through payroll deductions;  and (4) the employer receives no consideration in connection with the program.  Plans which meet each of these four factors are excluded from ERISA coverage. Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 463 (10th Cir. 1997).

Defendant Martinez singles out the AD&D policy from the other employee benefits available to Mr. Sandoval from Western Atlas.  For purposes of satisfying the safe harbor provision, however, one cannot sever optional coverage from the rest of the benefits the employee received through the employer's plan "'because the [optional] coverage was a feature of the Plan, notwithstanding the fact that the cost of such coverage had to be contributed by the employee.'"  Gaylor, 112 F.3d at 463 (*quoting* Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 567 (11th Cir. 1994)).


It is undisputed that the AD&D policy was part of an overall plan providing various types of insurance to employees.  Life insurance was provided by the employer as part of a benefits package and the AD&D policy was an optional supplement.  Thus, the safe harbor provision does not exclude the AD&D policy from ERISA.

But this does not end the analysis.  "The fact that [a] plan is not excluded from ERISA coverage by this [safe harbor] regulation does not compel the conclusion that the

7

plan is an ERISA plan." <u>Gaylor</u>, 112 F.3d at 463 (*citing* <u>Peckham v. Gem State Mut. Of</u> <u>Utah</u>, 964 F.2d 1043, 1049 n. 10 (10th Cir. 1992)).  "[A] program that fails to satisfy the [safe harbor provision] is not automatically deemed to have been 'established or maintained' by the employer, but, rather, is subject to further evaluation under the conventional tests." <u>Gaylor</u>, 112 F.3d at 463 (*citing* <u>Johnson v. Watts Regulator Co.</u>, 63 F.3d 1129, 1133 (1st Cir.1995)).

Normally, it is the movant's burden to show that ERISA applies to the insurance policy and preempts state law claims.  In this case, however, Defendant Martinez admitted in her Answer the allegations in the Complaint that "the subject matter of this controversy is an ERISA plan, and the Defendant is a beneficiary of said ERISA plan." Compl at 1 ¶ 4; Ans. at 1 ¶ 1.  Because of this admission, I shall place the burden on Defendant to prove that ERISA is not applicable to this case.  Defendant has presented no factual material whatsoever to meet her burden.

ERISA's definition of "employee welfare benefit plan," 29 U.S.C. § 1002(1), is broken down into the following elements:  (1) a "plan, fund, or program" (2) established or maintained (3) by an employer (4) for the purpose of providing sickness, accident, disability, death or unemployment benefits (5) to participants or their beneficiaries. <u>Gaylor</u>, 112 F.3d at 464.

The insurance policy at issue is only one element of the benefits provided to employees of Western Atlas.  Thus, the "plan, fund, or program" element is met. Additionally, the policy is a group policy that seems to be part of the "employment

relationship" between Mr. Sandoval and Western Atlas sufficient to meet the "established or maintained" element.  Gaylor, 112 F.3d at 464; Peckham, 964 F.2d at 1049.  The policy was issued to Western Atlas, and the policy terms require the employer to play an active role in reporting on eligibility and paying the premiums, even though it was reimbursed for the optional AD&D coverage by payroll deductions from the employees who opted to purchase this coverage.

I conclude that the AD&D insurance policy is an employee benefit plan within the scope of ERISA.  The Court has jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B) to determine whether benefits are due under the policy.

### 2.  To what extent does ERISA preempt state laws?

ERISA was designed to supplant all state laws regulating employee benefit plans with a uniform federal system of regulation.  Shaw v. Delta Airlines, Inc., 463 U.S. 85, 99 (1983).  State law claims that "relate to" an ERISA employee benefit plan are preempted.  29 U.S.C. § 1144(a).  The Supreme Court has adopted an "expansive sweep of the pre-emption clause."  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987).

*a. State Statutory Provisions.*  The parties have discussed the applicability of Texas and New Mexico statutes to the conversion privilege in the AD&D policy.  The policy was delivered in Texas to Western Atlas, a Texas corporation.  Ubaldo Sandoval lived and worked in New Mexico.

Defendant argues that the following provision of New Mexico state law requires continuation of coverage during the conversion period in this policy:

**CONVERSION PRIVILEGE; Death Benefit.**
> A group life insurance policy shall contain in substance a provision that if a person insured under the group policy, or the insured dependent of a covered person, dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with Sections 416 or 417 [N.M.S.A. 1978 § 59A-21-19 or § 59A-21-20] above and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

N.M.S.A. 1978 § 59A-21-21.

Plaintiff argues that a strikingly similar statute in Texas has been interpreted not to apply to AD&D policies, but only to life insurance policies:

> A provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with (8) or (9) above and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

Tex. Ins. Code Ann. Art. 3.50 § 2(10).

Under ERISA's "savings clause," those state laws that regulate insurance are saved from ERISA preemption. 29 U.S.C. § 1144(b)(2)(A). Plaintiff agrees that both the Texas and the New Mexico insurance code provisions that grant automatic life insurance coverage during the conversion period come under ERISA's "savings clause," which

provides:

> Nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A).[3]  I agree and conclude that these state laws are not preempted by ERISA.

The parties devote much of their argument to a conflict of laws discussion, but conflict of laws principles, such as the notion that a particular state may have strong public policy interests in protecting its residents, do not fit well with ERISA analysis, which favors a uniform approach.  In my view, however, neither of these statutes requires extended coverage during the 31-day conversion period in the AD&D policy.

Defendant's strongest argument is that under New Mexico's insurance code, "life insurance" is defined so broadly as to include AD&D insurance.  Many states have similar statutes requiring conversion privileges for life insurance policies, as well as broad definitions of life insurance, but the cases interpreting these statutes uniformly reject the argument advanced by Defendant.  *See, e.g.*, Ayre v. Brown & Root, Inc., 678 S.W.2d 564, 565 (Tex. App. 1984); LINA v. Klingler, 730 S.W.2d 32, 35 (Tex. App.

---

[3]  Most courts hold that state insurance laws dealing with conversion rights are not preempted by ERISA.  *See, e.g.,* International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294 (9th Cir.1991) (state conversion rights as applied to ERISA plans as opposed to covered employees not preempted); Henkin v. Northrop Corp., 921 F.2d 864 (9th Cir.1990) (state conversion rights for life insurance benefits not preempted).

1987); *see also* Henkin v. Northrop Corp., 921 F.2d 864, 868 (9th Cir. 1990) (Cal. law);[4]

Williams v. C.T. Life & Accident Ins. Co., 303 F.Supp. 1208 (D. Kan. 1968), *aff'd* 416

F.2d 44 (10th Cir. 1969); Missig v. Prudential Ins. Co. of Amer., 575 F.Supp. 1185, 1187

(E.D. Mich. 1983); Gamino v. Gen. Life Ins. Co., 671 A.2d 1108 (N.J. Super. 1996);

Sanders v. Pacific States Ins. Co., 840 P.2d 87 (Or. 1991); Gudnason v. LINA, 343

S.E.2d 54, 58 (Va. 1986); Gomez v. LINA, 928 P.2d 1153 (Wash. 1997).

Thus I conclude that even though the New Mexico statute requiring extended

coverage during the conversion period is not preempted by ERISA, it applies only to life

insurance policies and not to the AD&D policy.

                *b. Notice of Conversion Rights.*  In her statement of material facts,

Defendant alleges that no notice of termination or conversion right was given to

Geraldine Sandoval.  Summ.Material Facts #R at 7.  This allegation is unrebutted.

Without a notice requirement at the time of termination, the average insured

would not be aware of this important right even if the policy or certificate of insurance

containing the conversion privilege were delivered to the employee at the time of hire.

*See* Gresham v. Mass. Mut. Life Ins. Co., 590 A.2d 241, 245 (N.J. Super 1991) ("While

---

   [4]  Henkin was preceded by two cases that held that California Insurance Code § 10209
governing conversion privileges for life insurance policies applied to group accident policies.
Preaseau v. Prudential Ins. Co., 591 F.2d 74, 81 (9th Cir. 1979); Monson v. Life Ins. Co. of
North America, 558 F.Supp. 1354, 1358 (D. Nev. 1983).  In Preaseau, the parties had agreed that
§ 10209 applied to the accident policy, and in Monson, the court simply cited Preaseau for the
proposition, without further discussion.  I believe these cases have been implicitly overruled by
Henkin, which analyzes the issue in some detail.

the employment benefit plan has no express condition that the insurer's agents must inform the former employee of the amount of the conversion premium and supply an appropriate form to convert the policy, . . . these terms may be implied in law from the terms that are already present in the plan.  To do otherwise would render the beneficiary's right to convert meaningless.").

Both New Mexico and Texas have statutes requiring notice.  N.M.S.A. 1978 § 59A-18-16(E) and (F); V.A.T.S. Insurance Code, Art. 3.51-6 and 28 Tex. Admin. Code § 3.3602.  The New Mexico statute seems to require notice only to the employee, to be given by the insurer, whereas the Texas statute appears to require that an insured spouse also receive notice, and that the notice be given by the employer.  Many other states have similar statutes.  These statutes may be preempted by ERISA, which has its own notice requirements.

There is also a common law rule in many other jurisdictions requiring notice of conversion rights.  *See, e.g.,* Sur v. Glidden-Durkee, Div. of S.C.M. Corp., 681 F.2d 490, 494 (7th Cir. 1982) (Ind. law); Gresham v. Mass. Mut. Life Ins. Co., 590 A.2d 241, 245 (N.J. Super 1991); Estate of Saffles v. Reliance Universal, Inc., 721 S.W.2d 821, 823-24 (Tenn. App. 1985).  It may be that these rules are preempted by ERISA; it is also possible that such a rule should be incorporated into the federal common law of ERISA.

Because I am granting summary judgment for Defendant on other grounds, and because neither side briefed the issue, I do not reach the notice issue.

*c. Contract Interpretation.*  ERISA is silent on contract

13

interpretation.  Nevertheless, ERISA enables courts to interpret insurance policies according to a uniform federal common law, although state case law construing insurance policies and state law regarding principles of contract interpretation may be helpful in fashioning federal common law.  *See* Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 24, n. 26 (1983) ("body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans"); Diehl v. Twin Disk, Inc., 102 F.3d 301, 305 (7th Cir. 1996) (court applies principles of federal common law to interpret contract under ERISA); Sampson v. Mutual Ben. Life Ins. Co., 863 F.2d 108 (1st Cir.1988) (federal common law growing up around ERISA governed interpretation of employee policy); Carland v. Metropolitan Life Ins. Co., 727 F. Supp. 592, 597 (D. Kan. 1989) (determination of meaning of terms of employee welfare plans has become matter of federal law).

Under the federal common law of ERISA, as in most states including New Mexico and Texas,[5] the unambiguous terms of insurance policies are to be given a reasonable interpretation.  Ulmer v. Harsco Corp., 884 F.2d 98, 103 (3d Cir. 1989).  Contract terms are given their "ordinary and popular" sense, and if the plain and unambiguous policy language can be given only one reasonable construction, it must be enforced as written. Diehl v. Twin Disk, Inc., 102 F.3d 301, 305 (7th Cir. 1996); *see also* McGrath v. Home

---

[5]  *See* Richardson v. Farmers Ins. Co. of Arizona, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991); Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133-34 (Tex. 1994); Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984).

Ins. Co., 813 F. Supp. 276, 281 (D. Del. 1993) (creating ambiguity where none exists could, in effect, create new contract with rights, liabilities and duties to which parties had not assented).

    In the Tenth Circuit, ambiguities in ERISA policies are resolved in favor of the insured, not because of the state law *contra proferentem* rule,[6] but rather, as a matter of federal common law, because to do so is consistent with basic trust principles that protect the interests of the beneficiary-employee.  Blair v. Metropolitan Life Ins. Co, 974 F.2d 1219, 1222 (10th Cir. 1992) (*citing* Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98, 107 (2d Cir. 1991)).

    In interpreting an ERISA insurance contract, the policy language is interpreted according to what a reasonable insured would understand it to mean.  *See* McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1202 (10th Cir. 1992) (giving policy language "its common and ordinary meaning as a reasonable person in the position of the HMO participant, not the actual participant, would have understood the words to mean").  This principle is inherent in the statute itself:  ERISA requires that both participants and beneficiaries be provided information about the plan in a summary plan description ("SPD") that is "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise

---

    [6] The *contra proferentem* rule has been defined as "the practice of construing ambiguous terms against the insurer," McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1200 (10th Cir. 1992).

such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1).  The SPD must describe the plan's eligibility requirements, *Id.* § 2520.102-3(j), the plan benefits, *Id.* §§ 2520.102-3(j)(1)-(2), and any circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, or suspension of benefits.  *Id.* § 2520.102-3(l).  The SPD must be clear:  it "does no good unless an employee can read and digest it."  Stahl v. Tony's Bldg. Materials, Inc., 875 F.2d 1404, 1409 (9th Cir. 1989).

### 3.  Is the AD&D Policy Language Ambiguous?

I turn to an interpretation of the policy language to determine whether the denial of AD&D benefits was proper under the terms of the policy.  In doing so, I review the denial of benefits *de novo* because the policy does not give the ERISA plan administrator or fiduciary discretion to determine eligibility for benefits or to construe the terms of the plan.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 442 (10th Cir. 1996); Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114, 1118 (10th Cir. 1991).

The question is whether the AD&D policy should be interpreted to mean that benefits continued during the conversion period.  The policy is attached as Exhibit 1 to the Affidavit of Carol Blohm, the benefits administrator for Western Atlas.  It contains the following terms:

**THIS IS AN ACCIDENT POLICY WHICH DOES NOT
PAY BENEFITS FOR LOSS FROM SICKNESS.**

. . .

AD&D Policy, Ex. 1 to Aff. Blohm at 1.

<u>DESCRIPTION OF ELIGIBLE PERSONS</u>
. . . All active full-time employees of the Policyholder
[Western Atlas] . . . .
. . . Spouses under age 70 of participating . . . employees.
. . .

AD&D Policy, Ex. 1 to Aff. Blohm at 3.

**GENERAL PROVISIONS CONCERNING ADMINISTRATION**
. . .

**GRACE PERIOD:**
After payment of the first premium, this policy will have a
31-day grace period.  This means that if a premium is not paid
on or before the date it is due, it may be paid during the 31-
day grace period.  During this time, the policy will stay in
force.  The Organization [Western Atlas] is liable for the
payment of any premium while coverage is in force.
. . .

**TERMINATION OF PERSONAL INSURANCE:**
Coverage for any insured will end on the first premium due
date on which the Insured is no longer eligible; subject,
however, to any applicable "Conversion Privilege" contained
in this policy.  We will refund pro rata the unearned premium,
if any.
Eligibility will end if any of the following occur:
. . .
3. no longer within a covered class; or
4. non-payment of premium.

AD&D Policy, Ex. 1 to Aff. Blohm at 11-12 (pp. 4-5 of policy).

17

This rider amends the policy or certificate to which it is attached and ends at the same time.  The following provision is added.

## CONVERSION PRIVILEGE

We will issue a converted policy to you (the Insured) if the accidental death insurance under the policy or certificate ends for any of the following reasons:
>    a) employment . . . ends . . . .

**Application:**  To get a converted policy, you must:  (1) apply within 31 days after group coverage ends; and (2) pay the first premium.
. . .
**Effective Date:**  Your converted policy will take effect on: (1) the date group coverage ends; or, if later, (2) the date you apply for the converted policy.
**Benefits:**  The converted policy will cover accidental death and dismemberment.
. . .
**Dependents:**  Dependents may also convert group coverage when they cease to be eligible for any reason except age [70].
. . .
No other policy provision or condition is changed in any other way by this rider.

AD&D Policy, Ex. 1 to Aff. Blohm at 6.

Defendant Martinez argues that the policy is ambiguous as to when coverage ends because it fails to define the term "covered class" in the section on termination of insurance.  I do not find an ambiguity here.  The policy describes eligible persons as "all active full-time employees" of Western Atlas and their spouses, and then states that coverage ends when the insured is "no longer eligible."  Ubaldo Sandoval was "no longer eligible" when he left his full-time employment on February 24, 1995, and coverage

18

terminated "on the first premium due date" after that, subject to the conversion privilege.[7]
In this context, it seems plain that Geraldine Sandoval was no longer eligible at the same
time because she was no longer within the "covered class" of a spouse of an active full-
time employee.

Defendant also argues that coverage continued for the entire month of March
because Ubaldo Sandoval's last paycheck, which was issued by Western Atlas on March
3, had a deduction for the AD&D insurance premium, Def. Ex. 2.  Defendant asserts this
deduction was for the March premium, and that because the insurance company accepted
the payment, coverage should be deemed to continue for the month, making Geraldine
Sandoval's death on March 10 within the period of coverage.  Plaintiff has submitted a
second affidavit of Carole Blohm (attached to Doc. No. 27, Plaintiff's Response Brief to
Defendant's Motion for Summary Judgment) that explains that the March 3 payroll
deduction was to reimburse Western Atlas for the February premium, which it paid a
month in advance.  2d Aff. Blohm ¶¶ 10-13 at 3.  This affidavit remains unrebutted.
Thus, this argument fails because Defendant has failed to demonstrate that the payroll
deduction was for the March premium.

------

[7] One court found an ambiguity in the term "first premium due date" in the termination
clause of a group AD&D policy because that date could refer to the date when the employer's
premium was due to the insurance company or to the date when the employee's premium was
deducted from his paycheck.  Williams v. American Cas. Co. of Reading, Pa., 491 P.2d 398,
402-04 (Cal. 1971) (en banc).  However, even if the later date were used, i.e., March 3, this
would not help Defendant under the circumstances of this case because termination would be only
two days later, and still seven days prior to death.

Defendant argues next that the policy should be construed to extend coverage during the 31-day conversion period by virtue of the "stay in force" language of the grace period clause. She contends that there is an ambiguity as to the joint operation of the grace period and conversion privilege clauses. I agree.

Plaintiff argues that the grace period applies only to payment of premiums by the employer, Western Atlas, and that it has no applicability to the conversion privilege. This argument presents one way to interpret the AD&D policy, but in my view it is also reasonable to interpret the grace period as applying generally to the entire policy, including the conversion privilege. This interpretation is bolstered by comparison of a similar grace period clause in the group life insurance policy.

> Grace Period - there is a 31 day grace period after each premium due date after the first. Coverage will stay in force during this period if the premium is late. Coverage will end if the premium is not paid by the end of the grace period. If this happens, you will still owe us the premium for the grace period.

Policy No. LM-8L65(15909) at p.5. The grace period clause in the life insurance policy is located within a section entitled "Premiums," and quite plainly relates to payment of premiums by Western Atlas. In contrast, the grace period in the AD&D policy purports to be a general provision which, in the eyes of a reasonable insured person, would relate also to the conversion privilege, which is attached as a rider.

The conversion privilege clause refers to a "converted policy" but does not explain whether the converted policy will be a continuation of the group policy (as with group

health insurance under COBRA, 29 U.S.C. §§ 1161, 1162) or a new individual policy.  If it is a continuation of the group policy, then it seems more reasonable that the grace period would apply than if it is a new individual policy because the grace period kicks in "after payment of the first premium."  The group policy's first premium was paid when Ubaldo began working at Western Atlas, whereas a first payment was never made for a new individual policy for Geraldine.

In group insurance policies, grace periods that provide an extended period for payment of a premium by the employer have been held to be for the benefit of the employees, LINA v. Halker, 255 A.2d 68, 70 (Md. 1969); Bensinger v. California Life Ins. Co.,459 S.W.2d 511, 513 (Mo. App. 1970); Ozanich v. Metropolitan Life Ins. Co., 180 A. 67, 71, *supp.* 180 A. 576 (Pa. Super. 1935), although most cases hold that such grace periods do not benefit employees who have been terminated from their employment.  *See, generally,* 68 A.L.R.2d 8, 126-31, at §§ 77-81.

It is true that both the grace period clause and the conversion privilege clause refer to the "first premium."  This implies that the converted policy is a new policy, because of the necessity to "pay the first premium."  The grace period begins "after payment of the first premium," which can be interpreted to mean that it does not apply to extend coverage during the conversion period.  But this is not necessarily what a reasonable insured person would interpret the policy to mean.  These clauses were not "written in a manner calculated to be understood by the average plan participant," as required by ERISA, 29 U.S.C. § 1002(a)(1), but rather in insurance company jargon.

21

It is also true that the life insurance policy is more explicit about what happens when an insured dies during the conversion period.  It states:

> If [the insured] dies during this 31 day [conversion] period, then we will pay, as a claim on this policy, the amount of life insurance that he could convert.  It does not matter whether he applied for a converted policy.

Policy No. LM-8L65(15909) at p.4.  Such explicit language is lacking in the AD&D policy, but that does not control my conclusion.

The AD&D policy could have easily excluded extended benefits during the conversion period, or the grace period clause could have stated it did not apply to the conversion privilege.  Instead, the conversion privilege clause implies that the grace period applies to it with this language: "No other policy provision or condition is changed in any other way by this rider."  Some policies explicitly exclude conversion privileges from AD&D policies; others explicitly exclude extension of coverage from AD&D policies, and some do both.  *See, e.g.,* <u>Lowes v. Pan-American Life Ins. Co.</u>, 355 F.2d 433 (8th Cir. 1966) (Mo. law) (policy expressly excluded accidental death conversion coverage); <u>Williams v. C.T. Life & Accident Ins. Co.</u>, 303 F.Supp. 1208 (D. Kan. 1968) (policy excludes conversion of AD&D insurance), *aff'd* 416 F.2d 44 (10th Cir. 1969); <u>Missig v. Prudential Ins. Co. of Amer.</u>, 575 F.Supp. 1185, 1186 (E.D. Mich. 1983) (AD&D policy contains no conversion period); <u>Carter v. General Amer. Life Ins. Co.</u>, 452 S.W.2d 253, 255 (Mo. App. 1970) (AD&D policy had neither conversion clause nor extension of coverage clause); <u>Gamino v. General American Life Ins. Co.</u>, 671 A.2d

1108, 1009 (N.J. App. 1996) (AD&D policy excludes conversion privilege); <u>Norman v. Aetna Life & Cas. Co.</u>, 551 P.2d 667 (Okla. App. 1976) (AD&D policy excludes conversion right and extension of coverage); <u>Gudnason v. LINA</u>, 343 S.E.2d 54, 58 (Va. 1986).  The AD&D policy at issue here expressly includes both conversion rights and "stay in force" language in a grace period clause, and is silent on how they interrelate.  This creates an ambiguity as to extension of coverage during the 31-day conversion period.

Under ERISA trust principles the ambiguities in the AD&D policy must be construed in favor of coverage.  I therefore conclude there is coverage for Geraldine R. Sandoval's death under the AD&D policy.


NOW THEREFORE IT IS ORDERED that Defendant's Motion for Summary Judgment should be and is hereby GRANTED; a Summary Judgment shall be entered contemporaneously with this opinion;

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment should be and is hereby DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:  Benjamin Silva, Jr. and F. Barry McCabe, SILVA, RIEDER & MAESTAS, Albuquerque, N.M.

Counsel for Defendant:  C. Barry Crutchfield, TEMPLEMAN & CRUTCHFIELD, Lovington, N.M.